(77 South. 715)

WALKER, Superintendent of Banks, v.
SELLERS. (5 Div. 681.)

(Supreme Court of Alabama. Jan. 24, 1918.)

1. BANKS AND BANKING ⊛139—"CASHIER'S CHECK"—NATURE OF.

A "cashier's check," being merely a bill of exchange drawn by a bank on itself, and accepted in advance by the act of its issuance, is not subject to countermand by the payee after indorsement, and has the same legal effect as a certificate of deposit or a certified check.

[Ed. Note.—For other definitions, see Words and Phrases, Cashier's Check.]

2. BANKS AND BANKING ⊛80(10)—DEPOSITORS—RIGHTS OF.

A petition alleging that petitioner procured a cashier's check covering the amount of his deposit, that he indorsed the same over to another, that the check was returned unpaid to the bank in which the indorsee deposited it, the drawer bank in the meantime having been closed, and that the sum was charged back to the petitioner, does not state facts establishing petitioner's claim as that of a depositor preferred by Const. 1901, § 250; for, while the relation of depositor and creditor existing between petitioner and the bank continued as long as he retained the check, yet when indorsed over, title passed to the indorsee, who became entitled to collect the proceeds, and, upon dishonor and the closing of the bank, to recover as a creditor, and hence no recovery by petitioner can be allowed.

Appeal from Circuit Court, Chilton County; Gaston Gunter, Judge.

Petition by J. A. Sellers for intervention and to be declared a preferred creditor of the Clanton Bank. From the decree rendered, A. E. Walker, the Superintendent of Banks, appeals. Reversed, rendered, and remanded.

The petition shows that A. E. Walker, as superintendent of banks in Alabama, is administering the assets of the insolvent Clanton Bank in the circuit court of Chilton county in equity, and seeks to establish petitioner's claim against said bank as the preferred claim of a depositor under section 250 of the Constitution. It is alleged that petitioner deposited money in the said bank during the month of March, 1916, without stipulating for interest thereon, and that on March 30, 1916, he procured the issuance to himself by said bank of a cashier's check for $1,102.54, which covered the amount of his deposit; that on April 4, 1916, said cashier's check was indorsed over to Ed Waggoner by petitioner, who deposited the same in the American National Bank of Sapulpa, Okl., to the credit of Carl Waggoner & Son, and on said date, April 4, 1916, said check was forwarded to the Exchange National Bank of Tulsa, Okl., and about April 15, 1916, it was returned to said American National Bank with the notation thereon, "Bank closed," and the said sum has been charged back to petitioner. The petition sets up facts showing that, if petitioner is a preferred depositor, he is entitled to share in a distribution to such depositor of 80 per cent. of their claims. The demurrers present the question whether, up-

on the allegation of petitioner, the petitioner is a preferred depositor, or was such at the date of the insolvent bank's failure. The demurrers were overruled.

Steiner, Crum & Weil, of Montgomery, and Wm. M. Adams, of Clanton, for appellant. Smith & Smith, of Clanton, for appellee.

SOMERVILLE, J. [1] "A cashier's check, being merely a bill of exchange drawn by a bank on itself, and accepted in advance by the act of its issuance, is not subject to countermand by the payee after indorsement, as is an ordinary check by the drawer, and the relations of the parties to such an instrument are analogous to those of the parties to a negotiable note payable on demand." 2 Michie on Banks and Banking, § 139 (2); 5 R. C. L. 528, 529. But "when such a check is given to a depositor to cover the amount of a withdrawal, it is merely an acknowledgment of an indebtedness on the part of the bank to the payee of the order. The change thereby made is not in the nature of the debt, but in the evidence of it." 5 R. C. L. 483, 484; Clark v. Chicago, etc., Co., 186 Ill. 440, 57 N. E. 1061, 53 L. R. A. 232, 78 Am. St. Rep. 294.

As between the bank and the payee a cashier's check is, in legal effect, the same as a certificate of deposit or a certified check. Clark v. Chicago, etc., Co., supra; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 70 South. 754.

Certainly the purpose in each case is the same, that is, to enable the holder to use the check as money; and when a check is certified it ceases to possess the character, or to perform the functions, of a check, but represents so much money on deposit, payable to the holder on demand. National Com. Bank v. Miller, 77 Ala. 168, 175, 54 Am. Rep. 50. "Such a deposit stands upon exactly the same ground as any other." Id.

[2] Manifestly in the present case the cashier's check to petitioner did not, so long as it remained in his hands as owner, dissolve his relation with the bank as depositor, though the fund which it represented was withdrawn from its former subjection to his order other than through the medium of the cashier's check itself, just as would have been the case if he had procured a certified check instead. But when petitioner indorsed the check to Waggoner, he of course, transferred the fund to him, and Waggoner, as his transferee, acquired the status and enjoyed the rights of a depositor until he presented the check to and received payment from the drawer bank.

Obviously, then, petitioner has no interest in the fund represented by the cashier's check so long as that check is held by an indorsee; and there is no allegation in the pe-

tition showing that it is not still held and owned by the indorsee, Waggoner. On the face of the petition, Waggoner is entitled to claim the distribution due to depositors of the Clanton Bank, and not petitioner.

We do not overlook the allegation that the collecting bank returned the check to the depositee bank, and that "the said sum has been charged back to petitioner." When a deposited check on another bank is credited to the depositor's account, and is afterwards dishonored, the bank may, of course, charge the amount back to the depositor's account, and this action restores the check to the ownership of the depositor.

It does not appear who charged this check back to petitioner, but it could only have been done by Waggoner, of course. However, as between an indorser and indorsee in the course of business, even where the indorsement represents a payment on account, the mere act of charging back to the indorser's account the sum previously credited does not of itself restore the indorsed instrument to the indorser. Although the credit conditionally entered is suspended, yet the instrument still belongs to the indorsee, and he may still pursue his rights thereunder against the indorser and all prior parties. The dishonored instrument is restored to the legal ownership of the indorser only by its retransfer to him by the indorsee, or, in equity, by the indorser's payment to the indorsee of the original consideration for which it was given.

The respondent, as administrator of the insolvent bank, is entitled to protection against the apparent claim of Waggoner, as indorsee; and petitioner is entitled to the relief prayed only when he shows that he is the owner of the deposit represented and evidenced by the cashier's check.

In this aspect the demurrer should have been sustained, and the decree of the circuit court will be reversed, and one here rendered accordingly. Petitioner will be allowed 30 days in which to amend the petition.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.