FITZHUGH *v.* FIRST NATIONAL BANK OF BATESVILLE.

Opinion delivered May 21, 1928.

*Ernest Neill* and *S. M. Casey,* for appellant.
*Cole & Poindexter,* for appellee.

SMITH, J. Appellants filed suit against the First National Bank of Batesville, and for their cause of action alleged the following facts:

They were sureties on the official bond of William J. DeCamp, as sheriff and collector of Independence County. On the 30th day of December, 1926, the accounts of the said DeCamp as collector were being examined and audited by the commissioners of accounts of Independence County, and it appeared certain at the time that the said DeCamp was short in his accounts in a considerable sum, and, as his term of office expired December 31, 1926, it was necessary for him to make some arrangement satisfactory to the county regarding said shortage. At that time DeCamp had not filed his final settlement with the county as collector, and did not have his final report ready to file. The commissioners of accounts, the prosecuting attorney and the county judge required that said DeCamp make some provision that would insure the county in collecting said shortage when the amount thereof was finally determined, and thereupon DeCamp gave to J. A. Kennard, one of the commissioners of accounts, a check signed by him, drawn upon the defendant bank, in blank, payable to the said Kennard, agent for Wm. J. DeCamp, to cover the amount that the said DeCamp might later be found to owe Independence County for or on account as collector of delinquent personal taxes, and assured Kennard that he had the money in the bank to pay said check for such amount as might be inserted therein. That the said Kennard presented said check to the defendant bank and requested it to guarantee the payment of said check when later presented, and the defendant bank thereupon executed to Kennard the following agreement:

"Whereas, Wm. J. DeCamp, sheriff and collector, Independence County, Arkansas, has represented to us that he, as such official, is now due to make settlement of certain delinquent personal taxes collected by him for the years 1924 and 1925, together with other amounts checked

by commissioners of accounts, now in session, and charged against him; and he not having time to make his report and settlement covering same before the close of his term of office, December 31, 1926; and said Wm. J. DeCamp, advising that he had employed J. A. Kennard to make up, report and make settlement with the proper officials authorized to receive and receipt for such sums or amounts as may be found due to be paid by said W. J. DeCamp, as sheriff and collector for said years, and asked that the First National Bank honor his (W. J. DeCamp's) check for the amount filled in by said J. A. Kennard upon blank check given this date to said Kennard bearing signature of said Wm. J. DeCamp, not to exceed $3,500; therefore, as assistance to the carrying out the foregoing request and agreement, we, the First National Bank of Batesville, Arkansas, do hereby agree to honor such check upon presentation and filing with us of a certified copy of such report and settlement, and also the costs of preparing same, check not to exceed $3,500. (Signed) John Q. Wolf, cashier.'

''That the county authorities and plaintiffs, as sureties upon DeCamp's bond, relied upon this signed agreement of the defendant bank that it would pay the check of DeCamp on account of his shortage in any amount not exceeding $3,500, upon presentation of a certified copy of the settlement made up by Kennard, as stated in the agreement, and thereafter, resting secure in the belief that they would not be required to pay anything to the county as sureties of DeCamp, unless the shortage exceeded $3,500, these plaintiffs, sureties, took no steps to protect themselves from such liability and made no effort to obtain any security from the said DeCamp to protect themselves as his bondsmen, which they could and otherwise would have taken.

''That, after the completion of the audit and the amount of the shortage was determined, a judgment was rendered therefor by the county court, and the county judge, on May 10, 1927, caused the check to be presented

to the defendant bank, signed by DeCamp, filled out for $3,500, accompanied by a certified copy of the report and settlement made up by Kennard, as stipulated in the agreement made by the defendant bank, showing an indebtedness due Independence County of more than $3,500 for delinquent personal taxes collected by DeCamp, and demanded payment of the check. The check as presented was dated May 10, 1927, was payable to J. A. Kennard, agent for W. J. DeCamp, and was indorsed "J. A. Kennard, agent for W. J. DeCamp.' This demand for payment was refused, and the cashier of the bank made the following indorsement on the back of the check: 'Payment stopped by due written notice by W. J. DeCamp."

Thereafter, on account of the refusal of the bank to pay said check, the plaintiffs, as sureties on DeCamp's official bond, were required to pay to Independence County the sum of $3,530.54, that sum being the amount of the shortage.

Plaintiffs alleged that, by reason of such payment to the county, they became and are subrogated to all the rights and remedies of the county against the bank on account of its agreement and promise to pay the check of DeCamp, as set out above. Wherefore they prayed judgment against the bank for $3,500.

The defendant bank filed a demurrer to the complaint, which was sustained, and, plaintiffs standing on the complaint, the same was dismissed, and this appeal is from that decree.

We think the complaint stated a cause of action, and that the court was in error in sustaining the demurrer. The agreement signed by the bank in regard to the payment of the check was, in legal effect, a certification thereof in a sum not exceeding $3,500, and making the same payable to the holder thereof upon the presentation to the bank of the report of Kennard showing the amount of the shortage.

In the recent case of *Causey* v. *Eiland,* 175 Ark. 929, 1 S. W. (2d.) 1008, it was held that the certification

of a check constitutes a new contract between the holder and the certifying bank, whereby funds of the drawer are, in legal contemplation, withdrawn from his credit and appropriated to the payment of the check, and the bank becomes the debtor of the holder, and absolutely liable to pay the check when presented for payment.

It is true plaintiffs were not mentioned in this agreement, but it is also true that the purpose of the agreement was to pay the shortage of DeCamp in a sum not exceeding $3,500, and the refusal of the bank to perform this agreement made it necessary for the plaintiff sureties to pay this sum, in addition to the excess above it, to discharge their liability as sureties on DeCamp's bond. The county was the beneficiary of this agreement, but it received the benefit thereof when the sureties paid the shortage to the county.

In the case of *Carroll County Bank* v. *Rhodes,* 69 Ark. 43, 63 S. W. 68, it was held that the sureties of a county collector, who paid to the State a sum of money misapplied by the collector to the payment of a debt due by him to a bank, will be subrogated to the State's right of recourse against the bank. To the same effect see also *Boone County Bank* v. *Byrum,* 68 Ark. 71, 56 S. W. 532.

In the case of *Wilson* v. *White,* 82 Ark. 407, 102 S. W. 201, 12 Ann. Cas. 378, a sheriff took a bond as security for a fine and costs in a criminal case which did not conform to the requirements of the statute in that behalf (§ 3278, C. & M. Digest), and it was held that the sheriff was not acquitted of his liability for the fine and costs, as he would have been had the bond taken by him conformed to the statute, and he was required to pay to the county the amount of the fine and costs; but it was also held that, in making this payment, he was not a volunteer, and that he became subrogated to the rights of the county in the bond, and a judgment in favor of the sheriff against the surety on the bond, which was not a statutory bond, because of its failure to conform to the statute, was affirmed.

In the case of *Bank of Midland* v. *Harris,* 114 Ark. 344, 170 S. W. 67, Ann. Cas. 1916B, 1255, it was held (to quote a syllabus) that "the county officer who pays to the county money due the county in the regular course of his settlement with the county, is subrogated to the right of the county against the stockholders of a bank refusing to turn over to him county funds deposited therein."

We conclude therefore that the plaintiffs are entitled to be subrogated to any right the county may have had in this certified check.

Appellee insists that the demurrer was properly sustained for the reason that Independence County was not made a party to this suit. This contention may be answered by saying that appellee filed only a general demurrer, and the statute provides (§ 1190, C. & M. Digest) that the demurrer shall distinctly specify the grounds of objection to the complaint, and, unless it does, it shall be regarded as objecting only that the complaint does not state facts sufficient to constitute a cause of action. *Murphy* v. *Myar,* 95 Ark. 32, 128 S. W. 359, Ann. Cas. 1912A, 573; *Tomlinson Chair Mfg. Co.* v. *Joppa Mattress Co.,* 122 Ark. 566, 184 S. W. 32; *Creamery Package Mfg. Co.* v. *Wilhite,* 149 Ark. 576, 233 S. W. 710.

Appellee also insists that the complaint fails to show any cause of action in favor of the county on the check, for the reason that it was payable to the agent of the drawer, and was therefore, in effect, a check payable to the drawer himself, and also that the complaint does not allege the performance of the conditions under which the bank agreed to honor the check.

We think the allegations of the complaint sufficiently recite facts to make it appear that, although Kennard was the agent of DeCamp, the check was not to be collected for DeCamp's account, other than that the proceeds of the check, when collected, should be applied to the discharge of an obligation for which DeCamp was primarily liable, and in this sense only was the payee the agent of the drawer.

It is also true, as appellee insists, that the check was dated some months later than the agreement; but we think the agreement contemplated this, as the check was to remain unfilled as to amount until the amount of the shortage had been ascertained.

It is true also, as appellee insists, that the check was not payable to the plaintiffs, was not indorsed to them, and was not indorsed by them or by the county; but the agreement did not so contemplate. Kennard was constituted as agent, not only for DeCamp but for all parties concerned, and the agreement contemplated that Kennard should collect the money from the bank on the check and should see to the application of its proceeds.

It is finally insisted that the complaint does not allege that the report of the audit as made by Kennard shows that the cost of the audit had been paid. We are of the opinion that this is an immaterial allegation, as the obligation of the bank was to honor the check for a sum not exceeding $3,500, although a part of that amount was for the cost of the report, and the allegations of the complaint are that the plaintiffs paid on account of the shortage a sum greater than the amount for which the bank had agreed to honor the check.

We conclude therefore that the court was in error in sustaining the demurrer, and the decree will therefore be reversed, and the cause remanded with directions to overrule it.