Sayles *v.* Cox.

SAYLES *v.* COX.

(*Knoxville.*    November  12,  1895.)

1. INSOLVENT DEBTOR.  *Priority among creditors.*

One who sends a note and mortgage to a bank for collection, with a direction to the bank to "forward draft to me for balance," less its fee, is not entitled to a preferential claim on the funds of the bank upon its failure a few days after the collection is made, although it was hopelessly insolvent, and its officers knew the fact, when it received the note for collection. The bank becomes a debtor, not a trustee, in such case.  (*Post, pp. 580–582.*)

Case cited and approved: Aiken *v.* Jones, 93 Tenn., 353.

2. BANKS AND BANKING.  *Collections by.*

Collection by bank in a check upon itself is equivalent to collection in cash, even if the bank failed on the same day.  (*Post, p. 583.*)

Case cited and approved: Howard & Co. *v.* Walker, 92 Tenn., 452.

---

FROM  WASHINGTON.

---

Appeal   from   Chancery   Court   of   Washington County.   JOHN P. SMITH,  Ch.

KIRKPATRICK,  WILLIAMS,  &  BOWMAN  for  Sayles.

FAW  &  COX  for  Cox.

WILKES, J. Complainant's bill is filed to have a debt due her declared a preferential claim, to be paid in full out of the funds in the hands of defendant as receiver. There was a demurrer to the bill, raising the question of the right of complainant to any priority or preference, and it was sustained, and decree rendered in the Court below fixing the amount of complainant's debt, and directing that it share pro rata in the funds in the receiver's hands, but denying it any preference or priority, and dividing the costs equally between the parties. Complainant, by leave of the Court, appealed, and assigned errors. The cause was heard by the Court of Chancery Appeals, and the facts were found, and decree of the Chancellor was affirmed, and complainant has appealed to this Court.

The facts as found are, so far as necessary to be stated, that complainant is a resident of Connecticut, and sent to the First National Bank of Johnson City a note and mortgage on George and wife, citizens of Washington County, inclosed in a letter in the following words:

"I inclose herewith note and trust-deed and insurance policy on loan of Phebe S. Sayles to F. M. George and wife; also a release of the trust-deed. The amount due on the note is $900, with interest to be added from February 2, 1894. Will you please notify Mr. George and wife that the papers have been sent you for collection, and, upon his paying to you the amount due, deliver to him the

release, and forward draft to me for balance, less your fee. Very respectfully yours,

"ARTHUR G. BELL."

November 6, 1894, Mr. George delivered to the First National Bank a check, drawn by the Magnetic Building & Loan Association on said bank, for $1,-000, which the president and acting cashier received, and an entry was made on the books of the bank, showing a collection of complainant's debt.

It appears that the president of the bank made out an incomplete certificate of deposit, which was found in the bank a few days afterwards, when its doors were closed.

On November 12, 1894, the bank was placed in the hands of a national bank examiner, as an insolvent concern. Before the Court of Chancery Appeals, the contention was that the bank was hopelessly insolvent when the note was received, and this was well known to its president, and that it was a wrongful act to receive the note for collection under such circumstances; and it was further insisted by complainant that the bank, from the time the note was collected until it went into the hands of the bank examiner, as receiver, had in cash and cash items largely more than the sum collected on the note, and it was insisted, therefore, that, when the money was received from George by the bank, the latter acted as complainant's agent, and became liable to her as a trustee, and the fund collected became a trust-fund; that, being insolvent when the

money was collected, the bank never had any title to the funds, because of the fraud practiced in withholding information of its condition; that, having funds sufficient to pay the note and interest all the while after it was received, such funds were presumably the funds of complainant, and payments made by the bank on other accounts were presumably funds derived from other sources; and, finally, that, if complainant's funds were wrongfully commingled with the funds of the bank, it was the duty of the bank to separate them, and not to devolve that task upon the complainant.

We think the question involved in this case is fairly presented and adjudicated in the case of *Aiken* v. *Jones*, 9 Pick., 353, where the general rule is held to be that an indorsement for collection vests no title to the paper in the bank, etc., and it "may be recovered *in specie* before collection made; . . but, if the bank make collection before it makes an assignment, even though it be in fact insolvent, it simply becomes an ordinary contract debtor of the owner, and he cannot impress any trust character upon the proceeds." Citing Morse on Banking, Vol. I., 248.

There may be special facts which will take the case out of the general rule, and create a trust in the funds collected, and the learned Judge who delivered that opinion cited the case of *Bank* v. *Weems*, 5 Am. St. Rep., 85, and which is relied on in this case as presenting a case with special facts, and he

Sayles *v.* Cox.

continues: "But the rule undoubtedly is that, unless there is some agreement or course of dealing whereby the funds are to be held separate and the identical proceeds remitted, the owner of the draft stands on no higher ground than the other creditors of the bank in a case where the bank collects the draft prior to making a general assignment."

In that case the parties directed the Bank of Columbia to send them its check on New York in payment of the proceeds of collection, and this was held to be the determining fact in the record. It was virtually a direction not to send the identical moneys collected, nor to hold them separate, but was an agreement that the bank might use the money collected, and pay the creditors by its own check on New York. In the present case the direction is to "forward draft to me for balance, less your fee," which clearly implies that the bank, after collection, should retain its charges, and forward the balance, in its own draft, to the sender of the note.

The fact that George paid his note to the bank in a check upon itself can make no difference, as it was equivalent to a payment in money, even if the bank had failed the same day. Randolph on Commercial Paper, Secs. 1395, 1456; *Howard & Co.* v. *Walker*, 8 Pickle, 452.

It is said in this Court that the question was not raised in the pleadings whether the complainant and bank stood in the relation of principal and

Sayles *v.* Cox.

agent or that of debtor and creditor. We think the question of trust fund is fairly presented by the demurrer, and is, in effect, the same as to whether the bank must hold the funds separate and apart from all others, and remit them *in specie*, or whether it was authorized to hold the specific money collected in its own vaults, and remit its own check.

The question of the fraud of the bank in receiving the note to collect when it was insolvent cannot alter the rule. The contest is not between the complainant and bank alone, but between complainant and the other creditors of the bank, all of whom probably occupy the same position of having been misled into a belief in the solvency of the bank and its reliability for its acts.

We can see no error in the decree of the Chancellor nor of the Court of Chancery Appeals, and they are affirmed, with costs, against the complainant.