1. Northern Central Trust Company was a trustee of monies for the account of Charles S. Allen or Cliveden Building and Loan Association and William F. Leopold, Jr., in the respective sums of $1,328.21 and $5.

## In re Northern Central Trust Company. No. 2

*John P. Connelly*, for exceptants; *Todd Daniel*, for Secretary of Banking.

LAMBERTON, J., July 20, 1933.—

### Findings of fact

1. The exceptants, Newburger, Loeb & Co., are stockbrokers doing business at 1423 Walnut Street, Philadelphia; on September 25, 1931, Northern Central Trust Company issued its treasurer's check payable to Newburger, Loeb & Co. in the sum of $2,338.80, being treasurer's check no. MO211039.

2. The said check was issued in exchange for cash paid to Northern Central Trust Company by Newburger, Loeb & Co. at the time of the issuance of the check and the said cash was credited to the general ledger account.

3. On September 26, 1931, Northern Central Trust Company issued its treasuerer's check payable to Newburger, Loeb & Co. in the amount of $706.13, being treasurer's check no. MO21143.

4. The said check was issued in exchange for cash paid to Northern Central Trust Company by Newburger, Loeb & Co. at the time of the issuance of the check and the said cash was credited to the general ledger account.

5. At the time of the issuance of the said treasurer's checks, Newburger, Loeb & Co. maintained a demand deposit account with Northern Central Trust Company.

6. At the time of the issuance of the two treasurer's checks as aforesaid, Newburger, Loeb & Co. were not indebted to Northern Central Trust Company.

7. On September 28, 1931, William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, took possession of the business and property of Northern Central Trust Company.

8. When the said checks were presented for payment, payment was refused by the Secretary of Banking.

9. There was at all times from September 25, 1931, to the date of taking possession, sufficient currency in the vaults of the said trust company to cover the amount of the said treasurer's checks to the exceptants and all similar outstanding liabilities as to which a preference is asserted by reason of an alleged trust.

10. The Secretary of Banking filed his first and partial account on October 14, 1932, in which the claim of Newburger, Loeb & Co. in the respective sums of $2,338.80 and $706.13 is listed among "general claims admitted" on page 1467.

11. Exceptions have been filed by Newburger, Loeb & Co., contending that said claim is entitled to a preferred status and to payment in advance of depositors.

## Discussion

The payments of cash by exceptants to Northern Central Trust Company constituted either (1) a general deposit, (2) a special deposit, or (3) a purchase of negotiable paper. A general deposit is defined as: "the payment of money into the bank to be repaid on demand, in whole or in part, as called for in any current money": 7 C. J. 628. This classification has been somewhat broadened by statute in Pennsylvania, but on the facts here involved the above definition is sufficient. A special deposit is the delivery of money to the bank for the purpose of having the same safely kept and the identical money returned to the depositor, or applied to a specific purpose: 7 C. J. 630. In the case of a general deposit, the monies are properly mingled with the general funds and the relation of creditor and debtor ensues. In the case of a special deposit, the funds are to be kept intact until redelivered to the depositor or applied to the specific purpose, and the relation here is one of trustee and cestui que trust.

If the transactions here involved be construed as general deposits, exceptants are entitled to a depositor's, but not to a preferred status. If they be construed as the purchase of negotiable paper, exceptants are general creditors only, the claim being based not on the money paid to the bank but on the treasurer's checks. If they be construed as special deposits, a trust relation exists. The trust relation in itself, however, would not give exceptant the right to a preference: Commonwealth ex rel v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378; Mehler's Appeal, 310 Pa. 25. There must also be a tracing and identification of the funds. Where the bank is a trustee and the trust fund cannot be traced, the cestui que trust is a general creditor only: Commonwealth v. Tradesmen's Trust Co. (No. 1), 250 Pa. 372; Commonwealth ex rel v. Tradesmen's Trust Co. (No. 2), supra; Mehler's Appeal, supra. There is no tracing or identification in this

case. True, there was currency in the vaults, but the cash deposited has not been traced into the vaults. In any event, this matter of tracing becomes of no importance because, in our opinion, these were not special deposits. The necessary elements of such a status are lacking. There is no pretense and no argument that the intention of the parties was that the specific money should be retained by the bank and applied to payment of the treasurer's checks.

Were they then general deposits? In our opinion they were. Exceptants paid cash to the bank. The bank issued its treasurer's checks payable to the order of exceptants. Exceptants could then, by presenting these checks at the bank, have received the cash themselves, or they could have transferred the right to receive the cash to anyone they chose by endorsement of the checks. In other words the money was in possession of the bank, and exceptants could have done with it whatever they wished. This brings the transaction within the definition above cited, and also brings it within the language used by our Superior Court in the case of First State Bank of New Castle, Appeal of Anna Nocera, 95 Pa. Superior Ct., 199, where Judge Trexler said: "the word 'depositor' used in connection with a banking institution, means, as ordinarily understood, one who hands money to the bank which is mingled with the money of other depositors and who thereby becomes a creditor of the bank to the extent of the amount deposited and can withdraw it by check or draft at his will."

Counsel for the Secretary of Banking contends that such a conclusion is contrary to section 1 of the Act of May 8, 1907, P. L. 192, as amended by the Act of May 23, 1913, P. L. 354, which reads as follows: "Section 1. Be it enacted, &c., That in case of any distribution of the money, funds, property, or other assets, whatsoever, of any trust company, in the course of its liquidation by legal process or otherwise, distribution shall be made and preferred in the following order, namely:—

"First. To the payment of all depositors in the trust company, whether the deposits be subject to immediate check or only payable after specified notice, or at the expiration of a fixed period, whether or not such notice has been given or such period expired at the time of such distribution. Bona-fide holders for value of certified checks on such trust company, or of certificates of deposit issued by such trust company, or of checks or drafts of such trust company given in exchange for or in payment of checks or drafts of depositors of such company drawn thereon, not exceeding the balance to the credit of such depositor, shall also be treated and considered as depositors within the meaning of this act."

Counsel for the Secretary of Banking contends that since a depositor's status is given to "bona-fide holders for value of . . . checks or drafts of such trust company given in exchange for or in payment of checks or drafts of depositors of such company drawn thereon" a depositor's status cannot be enjoyed by one who receives such checks in exchange for cash. This is on the theory that the common-law relation of banks and depositors is that of debtor and creditor, and that the preferred status accorded to depositors is of purely statutory creation, so that one not given a special status by statute is a creditor only. We agree with the theory of counsel for the Secretary of Banking, but we believe that it has no application to this case. If the claim of exceptants were based upon the treasurer's checks held by it, the argument of counsel for the Secretary of Banking would be sound. Exceptants would then be entitled to a depositor's status if such checks had been given in exchange for checks or drafts of depositors, but not if given in exchange for cash. But the rights of exceptants do not depend upon the treasurer's checks but upon the fact that exceptants deposited monies with the bank, and that those monies have not been withdrawn. In other words, when the act gives a preferred status "to the payment of all

198

depositors in the trust company", the situation here involved is fully covered. The words of the act which follow broaden the class to be first paid. We need no broadening of the language above quoted to give exceptants the status of depositors. If no other words followed, they would be included, and what follows does not exclude them.

What has been said above eliminates the third possibility first stated, namely, that exceptants might be in the position of one having purchased negotiable instruments.

In his brief counsel for exceptants argues for a preference on the ground that the officers of Northern Central Trust Company must have known that the bank was insolvent when the deposits were received. Since there is nothing in the agreed facts to impute such knowledge to the bank officers, we need not consider this contention.

### Conclusions of law

1. Newburger, Loeb & Co. deposited with Northern Central Trust Company the aggregate sum of $3,044.93.

2. The relation of Northern Central Trust Company and Newburger, Loeb & Co. in regard to this fund was that of bank and depositor.

3. The relation between Newburger, Loeb & Co. and Northern Central Trust Company did not give rise to any trust.

4. Newburger, Loeb & Co. are entitled to a depositor's status in the sum of $3,044.93.

5. Newburger, Loeb & Co. are not entitled to a preferred status.

### Decree

And now, to wit, July 20, 1933, the exceptions of Newburger, Loeb & Co. are sustained to the extent that they are entitled to a depositor's status in the sum of $3,044.93. Said exceptions, insofar as they relate to a preference, are dismissed.